UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION LABORORS WELFARE FUND, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) Case No.: 4:19CV2105 HEA |
| SIMMS BUILDING GROUP, | ) ) ) |
| Defendant. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Summary Judgment, [Doc. No. 12]. Defendant has filed an opposition to the Motion, to which Plaintiff has replied. For the reasons set forth below, the Motion is granted.

**Facts and Background**

Plaintiffs have, in accordance with the Court's Local Rules, submitted a Statement of Uncontroverted Material Facts. In support of the Statement, Plaintiffs have submitted affidavits and the documents upon which the affidavits rely. Defendant has responded to the Statement, objecting to the submitted affidavits as hearsay and claiming that the documents speak for themselves. Defendant's objections are overruled. The affidavits contain the personal knowledge of the affiants; Defendant has failed to identify any hearsay contained within them.

Moreover, the fact that the documents "speak for themselves" fails to controvert the testimony contained in the affidavits. Defendant does not challenge the fact that required payments were not made, rather, Defendant's president admits that it failed to make required payments. Defendant also argued that the amount stated by Plaintiffs as not paid contained overlaps and duplicate amounts. Plaintiff has corrected this error in their reply. Defendant has not sought to dispute the corrected amounts.

    Thus, the undisputed facts are as follows:

The Greater St. Louis Construction Laborers Welfare Fund, hereinafter referred to as "the Welfare Fund," is an employee benefit plan within the meaning of Sections 3(1), (3), 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §§1002(1), (3), 1132 and 1145. Brandon Flinn, Matt Andrews, Steve MacDonald, Rich McLaughlin, Donald Willey, Gary Elliott, Terry Briggs, David A. Gillick, Brad Grant, Michael Lutz, Corey Black, and Robert Bieg, Jr. are the Trustees of the Welfare Fund.

    The Construction Laborers Pension Trust of Greater St. Louis, hereinafter referred to as "the Pension Trust," is an employee benefit plan within the meaning of Sections 3(2)(A), (3), 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1002(2)(A), (3), 1132 and 1145. Jeffrey O'Connell, Richard McLaughlin, Ronny Griffin, Brandon Flinn, Donald Willey,

Gary Elliott, Lou Grasse, Joseph Leritz, Doug Wachsnicht, Joe Hoette, William L. Luth, and David A. Gillick, are the Trustees of the Pension Fund. The St. Louis Vacation Fund – Vacation Plan, hereinafter referred to as "the Vacation Fund," is an employee benefit plan within the meaning of Sections 3(2)(A), (3), 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1002(2)(A), (3), 1132 and 1145. Brandon Flinn, Donald Willey, Richard McLaughlin, Terry Briggs, Mark Murphy, and Bob Bieg are the Trustees of the Vacation Fund. (The Vacation Trustees have changed since the date the suit was filed.)

AGC - Eastern Missouri Laborers Joint Training Fund, hereinafter referred to as "the Training Fund," is an employee benefit plan within the meaning of Sections 3(1), (3), 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1002(1), (3), 1132 and 1145. Patrick R. Pryor, Donald Willey, Perri Pryor, Gary Elliott, Richard McGuire, Brandon Flinn, Phil Hocher, Michael Luth, Joe Scarfino, Cliff Land, Frank Marchesi, and John J. Smith, Jr., are the Trustees of the Training Fund. Local Unions Nos. 42 and 110, Laborers International Union of North America, AFL-CIO, hereinafter referred to as "the Union," are labor organizations.

Defendant has been signatory to a collective bargaining agreement (CBA) between the Union and the Site Improvement Association since June 19, 2006.

The signature page to the CBA to which defendant is signatory states that defendant "agrees to be bound by all subsequent agreements, renewals, changes or extensions thereto made by the original parties, unless notice of termination is given to the Union by the undersigned not less than sixty (60) days nor more than ninety (90) days prior to any termination date." Defendant did not give notice of termination as required prior to the termination date of the 2009-2014 CBA and therefore, continued to be bound to the successor agreement that was negotiated by the Union and the Site Improvement Association.

Article V, Sections 5.03 through 5.10 of Exhibit C requires the submission of monthly reporting forms and payments to the Welfare, Pension, Vacation, Training, Site Advancement, Supplemental Dues, and LECET Funds in amounts specified in the agreement.

Defendant has failed to submit its reports and to pay its contributions for the months of August-October 2018 and May 2019.

Defendant has submitted reports of hours worked by its employees in covered employment but has failed to remit the contributions for those hours for the months of November 2017 through July 2017; November and December 2017; and February through April of 2019. Defendant owes $13,056.43 in contributions based on reports submitted without payment.

[4]

Section 5.10 of the CBA imposes liquidated damages of twenty percent (20%) on all amounts owed to plaintiffs that are not paid by the last day of the month following the month in which the hours were worked.

Defendant paid untimely or has not paid amounts owed to plaintiffs for the months of January through April, June through August, and September through December 2017; January through July, November, and December 2018; and January through April 2019. Liquidated damages of $13,129.22 and interest of $1,128.11 through June 16, 2020 have been assessed on the untimely paid/not yet paid contributions. Interest was calculated at the IRS underpayment rate, which is the short-term rate plus 3%.

The collective bargaining agreement also provides that plaintiffs shall have the right to perform a financial examination of defendant's books and records periodically to ensure that payments have been properly made in accordance with the terms of the collective bargaining agreement.

In accordance with Section 5.11 of Exhibit C, a financial examination was conducted on the records of defendant for the period of October 1, 2016 through January 31, 2019.

The financial examination found a total of 3,067.50 unreported hours.

The underreporting revealed by the examination resulted in an underpayment of $50,112.59 in contributions and $3,864.39 in supplemental dues,

[5]

on which is assessed $10,833.02 in liquidated damages, and $2,452.28 in interest through April 30, 2019. Interest is calculated at the IRS underpayment rate, which is the short-term interest rate plus 3%. In total, the examination found $67,262.28 owed to the plaintiffs. RSM US, LLP billed the Greater St. Louis Construction Laborers Benefit Funds $1,278.00 for performing the payroll examination.

On March 20, 2017, plaintiffs and defendant executed a settlement agreement concerning amounts owed by defendant to plaintiffs for the period of January 1, 2013 through December 31, 2016. In the settlement agreement, the parties agreed that defendant owed $115,115.40 to plaintiffs but plaintiffs agreed to repayment of the reduced amount of $70,000, as long as defendant complied with the payment plan set out in the settlement agreement. A failure to comply with the payment plan would permit plaintiffs to collect the entire delinquency of $115,115.40, minus whatever payments defendant had made.

Defendant made payments in the amount of $55,500 under the settlement agreement but then failed to make any further payments. As a result, defendant owes $59,615.40 under the settlement agreement.

The collective bargaining agreement authorizes the Funds listed in paragraph 7 to recover interest, attorneys' fees, court costs, and audit costs in suits to compel payment of underpaid contributions.  Plaintiffs have incurred $1,991 in legal fees and $455.66 in court costs in this case.

The total amount owed by Defendant to Plaintiff is $185,854.54.

## Summary Judgment Standard

The Eighth Circuit has articulated the appropriate standard for consideration of motions for summary judgment, as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

*Torgerson v. City of Rochester,* 643 F.3d 1031, 1043 (8th Cir. 2011) (*en banc*) (internal citations and quotation marks omitted). "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Wingate v. Gage Cnty. Sch. Dist., No. 34,* 528 F.3d 1074, 1078–79 (8th Cir. 2008) (cited

case omitted).  With this standard in mind, the Court accepts the above listed facts as true for purposes of resolving the parties' motions for summary judgment.

## Discussion

Section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce Section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of -

>  (i) interest on the unpaid contributions, or

>  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26.

This statute also entitles the Benefit Fund plaintiffs to recover unpaid contributions, liquidated damages, interest, costs, and attorneys' fees, in addition to the parties' agreement. There is no question plaintiffs are entitled to recover all of

the principal amounts, liquidated damages, interest, attorneys' fees, accounting fees, and costs they have incurred. *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Hroch*, 757 F.2d 184 (8th Cir. 1985); *Landy Packing Co. v. Meatcutters*, 471 F.Supp. 1218 (D.Minn. 1979), aff'd., 627 F.2d 881 (8th Cir. 1980).

## Conclusion

Based on the foregoing analysis, the Benefit Funds and Union are entitled to judgment against defendant in the total amount of $185,854.54.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, [Doc. No. 12], is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 24th day of July, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE